[729 NYS2d 4]

**Wanda Messina, Appellant-Respondent, v Alan Matarasso, M.D., F.A.C.S., P. C., et al., Respondents-Appellants.**

First Department, July 12, 2001

**APPEARANCES OF COUNSEL**

*Lita Beth Torres* of counsel, New York City (*Steven G. Storch* on the brief; *Storch Amini & Munves, P. C.,* attorneys), for appellant-respondent.

*Nancy A. Breslow* of counsel, New York City (*Martin, Clearwater & Bell,* attorneys), for respondents-appellants.

**OPINION OF THE COURT**

SULLIVAN, P. J.

This appeal presents the issue of whether this action, which seeks damages for the negligent performance of a medical procedure, allegedly conducted without plaintiff's authorization or informed consent, sounds in battery, subject to a one-year Statute of Limitations (CPLR 215 [3]), or medical malpractice, subject to a 2½-year Statute of Limitations (CPLR 214-a). Concededly, the action was not commenced within one year of its accrual, although it was commenced within the Statute of Limitations applicable in the circumstances presented to a medical malpractice claim.

Plaintiff alleges that on August 16, 1990, during cosmetic facial surgery performed under general anesthesia, defendant Matarasso performed a procedure on her breasts without her consent. According to plaintiff, when she awakened from the surgery, she experienced pain in her breasts. The next day, when she saw Dr. Matarasso for a follow-up examination, he asked her if she had "noticed" her breasts and informed her that he had performed closed capsulotomies[1] on both breasts. Prior to the facial surgery, plaintiff contends, she was suffering from hardness of her breasts resulting from silicone implants she had received in 1974. As a result of the capsulotomies, plaintiff alleges, the implants ruptured and silicone leaked out into her breasts and surrounding tissue, causing serious injury. At her deposition plaintiff testified that, prior to the August 16, 1990 surgery, she had never discussed her breast implants with Dr. Matarasso, whose deposition testimony was to the same effect. Dr. Matarasso denies that he either touched or performed any procedure on plaintiff's breasts during the course of the August 16, 1990 surgery.[2]

Defendant Matarasso, sued individually and as a professional corporation, moved for summary judgment dismissing the complaint or, in the alternative, dismissal of the complaint on the ground that it is time barred. The IAS court denied

---

1. A closed capsulotomy is a procedure which involves the manipulation of a breast to relieve the hardening of scar tissue which forms around an implant.

2. A nurse who was in the operating room "from the beginning of the surgery to the end" testified at her deposition that no procedure was performed on plaintiff's breasts and that, indeed, plaintiff's breasts were never exposed during that time. This testimony is stressed on defendant Matarasso's cross appeal from the denial of his motion for summary judgment with respect to the medical malpractice claim based on the absence of an issue of fact.

summary judgment, finding a triable issue as to whether the procedure was performed, but dismissed the complaint, concluding that the one-year Statute of Limitations for battery applies to plaintiff's action.

A claim for battery must be commenced within one year (CPLR 215 [3]), while a claim alleging medical malpractice, insofar as relevant, must be brought within 2½ years "of the act * * * complained of" (CPLR 214-a). Under traditional tort law, medical treatment beyond the scope of a patient's consent was considered an intentional tort or a species of assault and battery. (*See, Schloendorff v Society of N. Y. Hosp.*, 211 NY 125; *Rigie v Goldman*, 148 AD2d 23, 28; *Dries v Gregor*, 72 AD2d 231, 235.) The modern approach, however, views the failure to obtain the informed consent of a patient as "a form of medical malpractice based on negligence." (*Spinosa v Weinstein*, 168 AD2d 32, 41, citing, e.g., *Rigie v Goldman, supra*, 148 AD2d at 28-29; *Oates v New York Hosp.*, 131 AD2d 368.)

This approach is grounded in common sense. As the California Supreme Court noted in *Cobbs v Grant* (8 Cal 3d 229, 240, 502 P2d 1, 8), when the doctor obtains consent to a certain procedure and an undisclosed complication arises, what occurs is not necessarily an intentional deviation from the consent given but rather a deviation from the duty to disclose the information that a competent physician would have provided. On the other hand, when a patient agrees to treatment for one condition and is subjected to a procedure related to a completely different condition, there can be no question but that the deviation from the consent given was intentional.

Viewing the failure to make a full disclosure of the risks of the procedure and the alternate forms of treatment as negligence rather than as a battery, it should also be noted, is more favorable to the health care provider in terms of imposing a greater burden of proof on the plaintiff to establish liability. (Dobbs, Torts § 250, at 654 [2000]; *see also, Cobbs v Grant, supra*, 8 Cal 3d at 240, 502 P2d at 8.) Under a negligence theory, a plaintiff must prove a failure to disclose a reasonably foreseeable risk, that a reasonable person, so informed, would have opted against the procedure, an actual injury and that the procedure was the proximate cause of the injury. (*See, id.; see also, Eppel v Fredericks*, 203 AD2d 152; Public Health Law § 2805-d.) To establish a battery, however, it need only be shown that the defendant made bodily contact with the plaintiff and that the contact was either offensive in nature (*see, Zgraggen v Wilsey*, 200 AD2d 818) or without his

or her consent (*see, id.*; *Villanueva v Comparetto*, 180 AD2d 627, 629).

As the IAS court aptly noted, citing *Oates v New York Hosp.* (131 AD2d, *supra* at 369), "[c]ases where a procedure is completely unauthorized * * * must be distinguished from cases where a patient consents to a procedure without being fully aware of the risks and consequences involved." (*See also, Laskowitz v CIBA Vision Corp.*, 215 AD2d 25, 28; *Rigie v Goldman, supra*, 148 AD2d at 28; *Kowk Tung Tom v Lenox Hill Hosp.*, 165 Misc 2d 313, 315.) This is precisely such a case. Plaintiff does not claim that defendant Matarasso failed to inform her of the risks of the procedure or that he rendered medical treatment beyond the scope of her consent. (*Cf., Dries v Gregor, supra*; *Oates v New York Hosp., supra*.) Her claim, rather, is that he performed a procedure upon her with no consent at all. This is clearly an allegation of intentional conduct rather than conduct that can be construed as a deviation from the reasonable care standard.

Plaintiff's attempt to distinguish *Oates v New York Hosp.* (131 AD2d 368, *supra*) is unavailing. In *Oates*, this Court affirmed the denial of a motion to dismiss the plaintiff's assault claim where, despite the plaintiff's refusal to consent to a recommended surgical procedure, exploratory abdominal surgery was nevertheless performed. The Court held that the doctrine of lack of informed consent was inapplicable, concluding that "[i]n contrast to a situation where a patient consents to a medical procedure without being fully aware of the risks and consequences involved, the instant case concerns a physician who performed an operation on a patient although the patient emphatically refused to consent to such operation" (*id.*, at 369). Plaintiff argues that *Oates* is distinguishable since in this case she did not refuse to consent to the procedure and the procedure was never discussed. These distinctions are mere distractions and of no legal consequence.

Nor is plaintiff correct in arguing that an intent to do harm is an essential element of a battery claim. "An action for battery may be sustained without a showing that the actor intended to cause injury as a result of the intended contact, but it is necessary to show that the intended contact was itself 'offensive', i.e., wrongful under all the circumstances." (*Zgraggen v Wilsey*, 200 AD2d 818, 819; *see, Villanueva v Comparetto*, 180 AD2d 627.) Lack of consent is considered in determining whether the contact was offensive. (*Zgraggen v Wilsey, supra*.) The intent that must be shown is the intent to

make contact. (*Lambertson v United States*, 528 F2d 441, 444, *cert denied* 426 US 921.) Thus, since "once intentional offensive contact has been established, the actor [is not liable for] negligence, even when the physical injuries may have been inflicted inadvertently" (*Mazzaferro v Albany Motel Enters.*, 127 AD2d 374, 376), a lack of care "does not convert the action from intentional tort to negligence" (*id.*, at 377).

Thus, since this action was not commenced within the one-year Statute of Limitations applicable to a battery cause of action, it was properly dismissed.

Were we to reach the cross appeal, we would find it to be without merit.

Accordingly, the order of the Supreme Court, New York County (Helen Freedman, J.), entered February 17, 2000, which, *inter alia*, dismissed the complaint because the action is time barred, should be affirmed, without costs or disbursements.

MAZZARELLI, ELLERIN, LERNER and BUCKLEY, JJ., concur.

Order, Supreme Court, New York County, entered February 17, 2000, affirmed, without costs or disbursements.