Gary MEYERS, Individually and Guardian ad litem for Samara Meyers (a minor) and Patricia Meyers, Plaintiffs,

v.

Fred EPSTEIN, M.D., Ira Richmond Abbott, III, M.D., John Does 1–10, Jane Does 1–10, ABC Corporations 1–10 Defendants.

No. 01–Civ. 1754(GWG).

United States District Court, S.D. New York.

Nov. 14, 2002.

---

Bruce H. Nagel, Robert H. Solomon, Nagel Rice Dreifuss & Mazie, LLP, Livingston, New Jersey, for Plaintiffs.

Elliot J. Zucker, Aaronson Rappaport Feinstein & Deutsch, LLP, New York, New York, for Defendants.

## OPINION AND ORDER

GORENSTEIN, United States Magistrate Judge.

This case arises out of brain surgery performed on Samara Meyers, who was eleven years old at the time. Plaintiffs, Samara and her parents, allege that a doctor who had no authority to operate on Samara performed her surgery—a situation that is colloquially described as "ghost surgery." The defendants are the doctor who is alleged to have told the Meyers that he alone would be performing the surgery, Dr. Fred Epstein, and the doctor who in fact performed the surgery, Dr. Ira Richmond Abbott, III. The parties have consented to this matter being adjudicated by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The defendants now move for summary judgment as to all claims pursuant to Fed. R.Civ.P. 56. In considering the defendants' motion for summary judgment, the Court accepts the plaintiffs' version of the facts where supported by admissible evi-

dence and draws all factual inferences in plaintiffs' favor. *See, e.g., McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999). For the reasons stated below, the defendants' motion is granted in part and denied in part.

## I. *FACTUAL BACKGROUND*

In the summer of 1995, Samara Meyers, the daughter of plaintiffs Gary and Patricia Meyers, was diagnosed with a brain tumor. Later that year, Dr. Alan Gardner evaluated Samara and discussed with the Meyers family the possibility of removing the tumor and certain risks associated with that procedure. The Meyers family then sought a second opinion from Dr. Epstein. Dr. Epstein recommended surgery for resection of the brain tumor and, on August 21, 1995, Samara was admitted to New York University Medical Center to undergo this operation.

Prior to the surgery, Patricia Meyers signed two consent forms on behalf of Samara. One form authorized "such diagnostic procedure and hospital care and such medical treatment by Dr. Epstein, his assistant or his designees as is necessary in his judgment." The second form authorized "Epstein/Abbott and those whom he may designate as associates or assistants to perform [the operation] upon Samara Meyers."

According to the Meyers, Dr. Epstein told them prior to the surgery that he would be performing the surgery on Samara and that Dr. Abbott would be assisting him. *See* Certification of Patricia Meyers, dated April 25, 2002, at ¶ 2. Patricia Meyers allegedly told Dr. Epstein: "I know this is a teaching hospital, but I want to make sure that no one is touching my daughter but you." Transcript of the January 3, 2002, Deposition of Patricia Meyers at 58. Dr. Epstein allegedly responded: "Of course I will be the only one. I will be the one performing, I will be the one operating on her." *Id.* at 59.

Samara's operation took place on August 22, 1995 and was performed by Dr. Abbott. Dr. Epstein did not participate in the operation at all. Moreover, Dr. Abbott does not remember discussing anything with Dr. Epstein during the course of the operation, nor does he remember if Dr. Epstein was even present during the operation. *See* Transcript of the January 16, 2002, Deposition of Ira Richmond Abbott, M.D. ("Abbott Dep.") at 74–75. In fact, Dr. Epstein had never performed the type of surgery involved in Samara's operation, at least from the period that Dr. Abbott started working at the hospital. *See id.* at 44.[1] Following the operation, Dr. Epstein came to Samara's parents in the waiting room, where he told them the surgery went fine and that Dr. Abbott was going to be coming up also. Transcript of the January 3, 2002, Deposition of Patricia Meyers at 86–87.

The Meyers have alleged that the surgery caused Samara to experience left side paralysis, cognitive impairments, and a loss of left side peripheral vision in both eyes. Joint Pretrial Order, dated April 9, 2002, at 7. They have abandoned their claim, however, that the operation was improperly performed.

The instant action was filed on February 28, 2001, and the First Amended Complaint was filed on July 2, 2001. The First Amended Complaint invokes the Court's diversity jurisdiction, 28 U.S.C. § 1332, and sets forth a number of claims against the defendants. By virtue of the Meyers'

---

1. Dr. Epstein has been unable to provide deposition testimony because he has been in a coma due to an accident.

statements in the Pretrial Order and their briefing on the present motion, they are now pursuing only the following claims: (1) a claim for battery against Dr. Abbott; (2) a claim for malpractice against Dr. Epstein; and (3) a claim for fraud against Dr. Epstein. The claim for malpractice against Dr. Epstein, however, relates only to the statements he made about who would be performing the operation. The Meyers do not assert a claim of medical malpractice with respect to the performance of the operation itself.

## II. DISCUSSION

### A. Summary Judgment Standard

A district court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue is one that "may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); McPherson v. Coombe, 174 F.3d at 280. A material issue is a "dispute[ ] over facts that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S.Ct. 2505. Thus, " '[a] reasonably disputed, legally essential issue is both genuine and material' " and precludes a finding of summary judgment. McPherson, 174 F.3d at 280 (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996)). When determining whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. McPherson, 174 F.3d at 280. Nonetheless, "mere speculation and con-

jecture is insufficient to preclude the granting of the motion." Harlen Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir.2001).

### B. Applicable Law

Because the jurisdiction of this Court is premised exclusively on diversity, the forum state's choice of law rules govern as to which State's substantive law applies. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir.1996). Where tort claims are made, New York's choice of law rules apply an "interest analysis" under which the law of the jurisdiction having the greatest interest in the litigation is applied. Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998). In determining which state has the greatest interest in this litigation, the domicile of the parties and the locus of the tort are "almost exclusively" the deciding factors. Id.; see Cooney v. Osgood, 81 N.Y.2d 66, 73–74, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993). In this case, the Meyers are domiciled in New Jersey and the defendants in New York. The alleged torts took place in New York. Under these circumstances—and because neither party has argued that another state has a greater interest in the litigation—the Court will apply New York substantive law.

In a diversity case, the federal court must determine what the substantive state law is. See McCarthy v. Olin Corp., 119 F.3d 148, 153 (2d Cir.1997). "Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir.1994); accord Elliott Assocs., L.P. v. Banco de la Nacion, 194 F.3d 363, 370 (2d Cir.1999). When the

highest court of the forum state has not spoken, "the best indicators of how it would decide are often the decisions of lower [New York] courts." *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 850 (2d Cir.1992). Nonetheless, a court may also consider any authorities that the highest court of the state might consider, including cases from jurisdictions outside the forum state on the same or similar issues. *Elliott Assocs., L.P.*, 194 F.3d at 370; *accord Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir.2000) (in deciding how highest court would rule, courts should consider "relevant case law from other jurisdictions on the same or analogous issues ..."). This Court's goal, therefore, is to predict "[w]hat would be the decision of reasonable intelligent lawyers, sitting as judges of the highest New York court, and fully conversant with New York jurisprudence." *Bank of New York v. Amoco Oil Co.*, 35 F.3d 643, 650 (2d Cir.1994) (internal quotation marks and citations omitted).

### C. *Plaintiffs' Claims*

#### 1. *Battery*

■ The Meyers assert a claim of battery against Dr. Abbott. In New York, battery is an "intentional wrongful physical contact with another person without consent." *United Nat. Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir.1993); *Micalizzi v. Ciamarra*, 206 F.Supp.2d 564, 581 (S.D.N.Y.2002); *accord Messina v. Matarasso*, 284 A.D.2d 32, 34–35, 729 N.Y.S.2d 4 (1st Dep't 2001) ("[t]o establish a battery, ... it need only be shown that the defendant made bodily contact with the plaintiff and that the contact was either offensive in nature or without his or her consent") (citations omitted). When a doctor who is not authorized to operate on a patient operates anyway—or exceeds the scope of the patient's con-sent—the doctor has committed a battery. *See Schloendorff v. Society of N.Y. Hosp.*, 211 N.Y. 125, 129–30, 105 N.E. 92 (1914) ("Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an assault, for which he is liable in damages.") (Cardozo, J.); *Fogal v. Genesee Hosp.*, 41 A.D.2d 468, 473, 344 N.Y.S.2d 552 (4th Dep't 1973).

In cases where the action is premised on the lack of informed consent of the patient, however, the modern view is to treat the claim as a form of malpractice based on negligence rather than one for battery. *See, e.g., Messina v. Matarasso*, 284 A.D.2d 32, 34, 729 N.Y.S.2d 4 (1st Dep't 2001); *Rigie v. Goldman*, 148 A.D.2d 23, 28–29, 543 N.Y.S.2d 983 (2d Dep't 1989); *Dries v. Gregor*, 72 A.D.2d 231, 235–36, 424 N.Y.S.2d 561 (4th Dep't 1980). The theory in these cases is that the doctor was negligent for failing to outline all of the potential risks associated with the contemplated surgery. *See Rigie*, 148 A.D.2d at 29, 543 N.Y.S.2d 983. While the defendants argue that these cases foreclose the Meyers' battery claim, the Meyers do not contend that they were not informed of the risks of surgery. Instead, they claim that they did not consent to Dr. Abbott being the surgeon at all. Therefore, the informed consent cases are inapposite. *See generally Oates v. New York Hosp.*, 131 A.D.2d 368, 517 N.Y.S.2d 6 (1st Dep't 1987) (permitting battery claim where patient refused consent to operation and distinguishing cases involving lack of informed consent).

The New York Court of Appeals has not ruled on whether a cause of action exists for a plaintiff who, as alleged here, was told that one doctor would be the primary surgeon when in fact another doctor per-formed the surgery. Accordingly, the

Court must look to lower court decisions and decisions of other jurisdictions to determine how the New York Court of Appeals would rule. *See In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d at 850; *Bank of New York*, 35 F.3d at 650.

The Court is aware of only one New York case on this issue. In *Tom v. Lenox Hill Hospital*, 165 Misc.2d 313, 627 N.Y.S.2d 874 (1995), the plaintiff consented to surgery by one doctor, but another doctor performed it. The court held that the plaintiff could proceed with an action for battery because the claim was premised on a lack of consent, not a lack of informed consent. *Id.* at 315–16, 627 N.Y.S.2d 874. In *Perna v. Pirozzi*, 92 N.J. 446, 457 A.2d 431 (1983), the New Jersey Supreme Court similarly allowed a battery claim predicated on the wrong doctor theory. The Court reasoned that

> [a]bsent an emergency, patients have the right to determine not only whether the surgery is to be performed on them, but who shall perform it. A surgeon who operates without the patient's consent engages in the unauthorized touching of another and, thus, commits a battery.

*Id.* at 461–62, 457 A.2d 431. Other states have also permitted battery claims in such cases. *See, e.g., Taylor v. Albert Einstein Medical Center*, 723 A.2d 1027, 1036 (Pa.Super.1998), *aff'd in relevant part, rev'd in part*, 562 Pa. 176, 754 A.2d 650 (2000); *Pugsley v. Privette*, 220 Va. 892, 900–01, 263 S.E.2d 69 (1980). Thus, case law supports the Meyers' battery claim.

Defendants argue the battery claim cannot proceed because there is a signed consent form that on its face authorizes Dr. Abbott to perform the surgery. Were this consent form an enforceable contract that contained a no-oral-modification clause, the defendants undoubtedly would be entitled to summary judgment on this issue.

In this case, however, there is no such contract. While the consent form would certainly permit a jury to find that the Meyers had consented to Dr. Abbott performing the procedure, the Meyers have provided sufficient evidence to allow a jury to conclude that they did not give such consent. For example, Patricia Meyers testified at her deposition that Dr. Epstein told her that he was going to be the only doctor operating on Samara. In deciding whether the Meyers in fact consented to Dr. Abbott performing the surgery, a jury could reasonably find that Dr. Epstein's oral statements that he alone would perform the surgery overrode any statement in the consent form to the contrary. *See Tom*, 165 Misc.2d at 317, 627 N.Y.S.2d 874 (denying summary judgment on issue of consent even though the language in the consent form gave permission to the surgeon who performed the surgery). Thus, the consent form "only raises a factual issue as to whether there was consensual contact." *Id.*

Defendants also argue that intent to cause injury is an essential element of battery and the battery claim must be dismissed because there is no evidence that Dr. Abbott harbored such intent. While the two cases defendants cite do support this legal proposition, *Mager v. Hosp. for Special Surgery*, 1994 WL 240367 (S.D.N.Y. May 26, 1994), and *Spinosa v. Weinstein*, 168 A.D.2d 32, 41, 571 N.Y.S.2d 747 (2d Dep't 1991), they are against the vast weight of New York authority and, when their origins are traced, appear to be without any support in New York law. In support of its statement that intent to cause injury is a required element of battery, *Mager* relies solely on *Spinosa*. *Spinosa* in turn relies on two New York cases: *Murriello v. Crapotta*, 51 A.D.2d 381, 382 N.Y.S.2d 513 (2d Dep't 1976) and *Mullany v. Eiseman*, 125

A.D.2d 457, 509 N.Y.S.2d 387 (2d Dep't 1986). *Mullany* relies solely on *Murriello*. *Murriello*, however, states this intent requirement without any citation whatsoever. Nor was its statement necessary to the holding of the case—that a claim for lack of informed consent is governed by the statute of limitations applicable to malpractice actions.

Arrayed against this apparently stray line of authority is a much more significant body of New York case law holding that the only intent necessary to support a claim of battery is simply the intent to make contact. *See, e.g., Villanueva v. Comparetto*, 180 A.D.2d 627, 629, 580 N.Y.S.2d 30 (2d Dep't 1992) ("Although the injury may be unintended, accidental, or unforeseen a plaintiff seeking to establish a civil battery need only prove that the defendant intentionally touched his person without his or her consent.") (citation omitted); *Tom*, 165 Misc.2d at 316, 627 N.Y.S.2d 874 ("It is well settled that the intent to do harm is not a necessary element of a battery."); *accord Miele by Miele v. United States*, 800 F.2d 50, 53 (2d Cir.1986) ("The gravamen of an action for assault and battery under New York law is the intent to make contact."); *Universal Calvary Church v. City of New York*, 2000 WL 1538019, at *22 (S.D.N.Y. Oct.17, 2000) ("Plaintiffs need only show that a defendant intended the contact, not that they intended the specific harm.") (interpreting New York law). The New York Court of Appeals, although not so holding in explicit terms, appears to be of the same view. In *Maines v. Cronomer Valley Fire Dep't, Inc.*, 50 N.Y.2d 535, 429 N.Y.S.2d 622, 407 N.E.2d 466 (1980), the court expressly rejected "defendants' suggestion

that plaintiff must allege that defendants intended to bring about the harmful consequences that ensued" and found that "deliberate intent or conscious choice to do the act which results in the injury" is all that is required in an action for assault. *Id.* at 545–46, 429 N.Y.S.2d 622, 407 N.E.2d 466.[2] In so holding, *Maines* cited to *Masters v. Becker*, 22 A.D.2d 118, 254 N.Y.S.2d 633 (2d Dep't 1964) and *Baldinger v. Banks*, 26 Misc.2d 1086, 201 N.Y.S.2d 629 (1960), which themselves explicitly state that there is no requirement of intent to do harm. *See Masters*, 22 A.D.2d at 119–20, 254 N.Y.S.2d 633; *Baldinger*, 26 Misc.2d at 1087, 201 N.Y.S.2d 629. Thus, it appears that New York law does not require plaintiffs to show that defendants intended to cause harm.

Nor does New York law support defendants' argument that a battery claim not only requires a touching but that this touching must be "offensive." Reply Affidavit, filed May 2, 2002 ("Reply Aff."), at 2. The First Department has held that "[t]o establish a battery ... it need only be shown that the defendant made bodily contact with the plaintiff and that the contact was either offensive in nature *or without his or her consent."* *Messina*, 284 A.D.2d at 34–35, 729 N.Y.S.2d 4 (emphasis added). As noted, there is a genuine issue of fact as to whether Dr. Abbott's touching was consensual.

In sum, the Court concludes that the New York Court of Appeals would allow a claim of battery to proceed against a doctor who was not authorized by the patient to perform the surgery. That being said, it is unclear how the Meyers were damaged by the surgery given that there is no

**2.** While an "assault" in the civil context requires only that the complainant be put in fear of harmful contact, the reference to "assault" in this and some other New York cases is used to mean the common law tort of

"battery," which requires actual contact. *See generally United Nat. Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir.1993).

evidence suggesting that it was medically unnecessary or improperly performed. Nonetheless, nominal damages are available in a battery case, *see, e.g., Brooker v. State*, 206 A.D.2d 712, 614 N.Y.S.2d 640 (3d Dep't 1994), and there may be some damages that could be shown from the plaintiffs' discovery, after the fact, that the operation was performed by a doctor different from the one to whom consent was given. *See Perna*, 92 N.J. at 461, 457 A.2d 431 (permitting damages for mental anguish resulting from such belated knowledge). Accordingly, summary judgment on the battery claim is denied.

### 2. *Negligence*

■ The Meyers allege that Dr. Epstein was "negligent" because he "deviated from the standard of care regarding his preoperative handling of and disclosures regarding Samara Meyers' surgery." *See* Joint Pretrial Order at 16; Plaintiffs' Brief I[n] Opposition to Defendants' Motion for Summary Judgment, dated April 26, 2002 ("Pls.Br."), at 7. The Meyers' reliance on the "deviat[ion] from the standard of care" makes clear that their negligence claim is essentially one of malpractice. "The elements of proof in an action to recover damages for medical malpractice are (1) deviation or departure from accepted practice, and (2) evidence that such departure was a proximate cause of injury or damage." *See, e.g., Lyons v. McCauley*, 252 A.D.2d 516, 517, 675 N.Y.S.2d 375 (2d Dep't 1998) (citation omitted). The Meyers have provided evidence from an expert witness, a physician, stating that the substitution of a doctor different from the one a patient is told will conduct a surgery constitutes a "deviation from accepted medical practice." Report of David Befeler, M.D., dated February 12, 2002, at·4–5. This substitution was the proximate cause of any mental anguish that arose from the belated knowledge that the incorrect doctor had operated. Accordingly, it appears that the Meyers have met the elements of a medical malpractice claim.

The defendants counter that this claim is, instead, one of "lack of informed consent." Memorandum of Law, dated April 23, 2002, at 3. Based on this contention, they note that New York Public Health Law § 2805–d provides for a number of defenses to claims of lack of informed consent, some of which would apply in this case. *Id.* at 3–5. Defendants' argument, however, incorrectly assumes that the Meyers' claim is based on "lack of informed consent." In fact, the definition of such claims under New York law makes plain that the malpractice claim does not implicate lack of informed consent. The statute provides:

> Lack of informed consent means the failure of the person providing the professional treatment or diagnosis to disclose to the patient *such alternatives thereto and the reasonably foreseeable risks and benefits involved* as a reasonable medical, dental or podiatric practitioner under similar circumstances would have disclosed, in a manner permitting the patient to make a knowledgeable evaluation.

New York Public Health Law § 2805–d(1) (emphasis added). The plaintiffs in this case make no claim that there was a failure to disclose "alternatives" to the procedure or the procedure's "risks and benefits." Thus, this statute on its face does not apply to their situation.

Defendants also argue that the decision in *Messina* forecloses any claim based on negligence or malpractice. In *Messina*, however, the Court was faced with a situation where it was alleged that a doctor performed a surgical procedure that was "completely unauthorized" by the patient.

284 A.D.2d at 35, 729 N.Y.S.2d 4. It therefore construed the complaint as reflecting an intentional tort that was incompatible with any claim of a "deviation from the reasonable care standard." *Id.* For this reason, it allowed a battery claim to go forward against the surgeon who allegedly performed the unauthorized surgery but not a claim for malpractice. Certainly, *Messina* supports the view that the New York courts would permit a battery claim against Dr. Abbott. *Messina,* however, does not govern the claim against Dr. Epstein. Dr. Epstein's alleged action could not be construed as a battery and, indeed, the Meyers make no such claim. Rather, the only available claim against Dr. Epstein turns on the statements he made to the Meyers in his capacity as their doctor. Because the Meyers' allegation that Dr. Epstein deviated from a proper standard in this situation is not incompatible with their allegation that Dr. Abbott committed a battery, *Messina* does not preclude the Meyers' claim for malpractice.

Finally, the New Jersey Supreme Court in *Perna* permitted the patient to proceed with a malpractice claim against the doctor who allegedly substituted another doctor for performance of surgery. *See Perna,* 92 N.J. at 465, 457 A.2d 431. As here, this claim was in addition to the claim for battery. *Perna* noted that

> [A] patient has the right to know who will operate and the consent form should reflect the patient's decision. Where a competent patient consents to surgery by a specific surgeon of his choice, the patient has every right to expect that surgeon, not another, to operate.... The failure of a surgeon to perform a medical procedure after soliciting a patient's consent, like the failure to operate on the appropriate part of a patient's body, is a deviation from standard medical care.

*Id.* The Court therefore concludes that the New York Court of Appeals would permit a claim of malpractice to be advanced against Dr. Epstein.

### 3. *Fraud*

The Meyers' claim of fraud against Dr. Epstein rests on three separate grounds: (1) that Dr. Epstein intentionally misrepresented that he would be performing the surgery; (2) that he intentionally misrepresented to the Meyers that a videotape of the operation was unavailable; and (3) that he intentionally misrepresented to an insurance company that he (as opposed to Dr. Abbott) performed the operation. *See* Pls. Br. at 9–11. Each is discussed below.

### a. *Identity of Surgeon Claim.*

Under New York Law, "[w]here a fraud claim gives rise to damages which are not separate and distinct from those flowing from an alleged medical malpractice cause of action, it must be dismissed." *Karlin v. IVF America, Inc.,* 239 A.D.2d 560, 561, 658 N.Y.S.2d 73 (2d Dep't 1997); *accord Luciano v. Levine,* 232 A.D.2d 378, 379, 648 N.Y.S.2d 149 (2d Dep't 1996); *see also Frangipane v. Dow Corning Corp.,* 1998 WL 142354, at *4 (S.D.N.Y. Mar.27, 1998); *Rizk v. Cohen,* 73 N.Y.2d 98, 105–06, 538 N.Y.S.2d 229, 535 N.E.2d 282 (1989) (rejecting fraud claims where "plaintiff's allegations do not establish that [the doctor], acting with knowledge of *prior* malpractice, made *subsequent* misrepresentations in an attempt to conceal his earlier negligence") (emphasis in original). Dr. Epstein's alleged malpractice—involving the alleged misstatement as to who would perform the surgery—is not separate from the fraud being alleged; indeed, the statement that is alleged to constitute malpractice is the very statement that is alleged to be fraudulent. Because New York appears to bar any fraud claim in this situation, the Court must dismiss the fraud

claim insofar as it relates to Dr. Epstein's statements to the Meyers as to who would perform the surgery.

 b. *Fraud Regarding the Videotape.* Under New York law, a plaintiff alleging fraud must demonstrate "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Lama Holding Co. v. Smith Barney,* 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996) (citing cases); *see also Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 19 (2d Cir.1996) (characterizing the final element as a requirement that plaintiff show he or she "suffered damage as a result of such reliance").

The Meyers have provided no evidence as to how the failure to disclose the videotape caused them injury. The Meyers' brief states that this fraud "hindered [their] ability to find treatment for their daughter," Pls. Br. at 10, and that it "took away subsequent treating doctors' ability to use the videotape to better treat Samara." *Id.* at 10–11. No admissible testimony or other evidence is cited in support of these allegations of injury, however. The statements in the brief are insufficient to carry the Meyers' burden on this motion for summary judgment under Fed.R.Civ.P. 56(e), which mandates that a party opposing summary judgment "may not rest upon the mere allegations or denials" but must offer competent evidence to show that there is a genuine issue for trial. Accordingly, Dr. Epstein is entitled to summary judgment on this aspect of the fraud claim.

c. *Fraud as to the Insurance Form.* The Meyers offer no basis whatsoever— either through arguments in their brief or through admissible evidence—for concluding that this alleged fraud caused them any injury. Accordingly, it too cannot serve as a basis for a fraud claim.

### III. *CONCLUSION*

Summary judgment is granted in favor of the defendants with respect to the plaintiffs' claims for fraud. It is denied with respect to plaintiffs' battery and malpractice claims.

SO ORDERED.