Young v Sethi (2020 NY Slip Op 06330)





Young v Sethi


2020 NY Slip Op 06330


Decided on November 5, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 5, 2020

530445

[*1]Lisa M. Young, Appellant,
v
Khalid Sethi et al., Respondents.

Calendar Date: September 16, 2020

Before: Garry, P.J., Egan Jr., Lynch, Mulvey and Reynolds Fitzgerald, JJ.


Richard Engelberg, Plainview, for appellant.
Aswad & Ingraham, LLP, Binghamton (Thomas A. Saitta of counsel), for respondents.



Garry, P.J.
Appeal from an order of the Supreme Court (Tait, J.), entered June 26, 2019 in Broome County, which granted defendants' motion for summary judgment dismissing the complaint.
In July 2013, defendant Khalid Sethi, a neurosurgeon, and defendant Christian Tvetenstrand, a general surgeon, performed interbody fusion surgery on plaintiff's spine to correct her spondylolisthesis, in which her L5 vertebrae was displaced over the S1 vertebrae. In February 2016, plaintiff commenced this medical malpractice action. As later amplified in discovery, plaintiff asserted that she was born with a genetic physical anomaly known as a twisted or rotated pelvis that had been present throughout her life without causing pain or other complications. The complaint alleged that defendants acted negligently during the July 2013 surgery by repositioning or derotating plaintiff's pelvis without her knowledge or consent, causing her to suffer permanent injuries and debilitating pain. Defendants joined issue, denying, among other things, that they had repositioned or manipulated plaintiff's pelvis in any way. Following discovery, defendants moved for summary judgment dismissing the complaint. Supreme Court granted the motion. Plaintiff appeals.
"In a medical malpractice action, the plaintiff must show that the defendant deviated from acceptable medical practice, and that such deviation was a proximate cause of the plaintiff's injury" (Mazella v Beals, 27 NY3d 694, 705 [2016] [internal quotation marks and citation omitted]; accord Gallagher v Cayuga Med. Ctr., 151 AD3d 1349, 1351 [2017]). "Accordingly, on a motion for summary judgment, the defendant must establish 'either that there was no departure from accepted standards of practice in the plaintiff's treatment or that any such deviation did not injure the plaintiff'" (Butler v Cayuga Med. Ctr., 158 AD3d 868, 869 [2018], quoting D'Orta v Margaretville Mem. Hosp., 154 AD3d 1229, 1231 [2017]). Upon their summary judgment motion, defendants asserted that they did not depart from the standards of practice for interbody fusion surgery, supporting their motion with, among other things, Sethi's testimony that he "absolutely" did not change the orientation of plaintiff's pelvis and that it was not anatomically possible to do so during such surgery. Defendants also submitted the expert affirmation of John Pollina Jr., a board-certified neurosurgeon, who opined that defendants were not negligent and did not deviate from the applicable standard of care in recommending and performing the surgery.[FN1] Pollina stated that his review of preoperative and postoperative films revealed that plaintiff did not have a rotated pelvis before the surgery and that there was no change in the orientation of her pelvis in relation to her spine after the surgery.[FN2] Pollina noted that neither the operative reports nor Sethi's records of plaintiff's postoperative visits referenced any derotation or manipulation of plaintiff's pelvis. He stated that nothing in the procedure of interbody fusion surgery involved any change in the orientation of plaintiff's pelvis along the transverse plane and that such a change would be "clinically impossible."
As to informed consent, Pollina opined that Sethi gave plaintiff the information about the reasonably foreseeable risks and benefits of interbody fusion surgery that a reasonable medical practitioner would have disclosed under similar circumstances, and that Sethi was not required to inform plaintiff that her pelvis might be derotated during that surgery. Pollina's affirmation was "detailed, specific and factual in nature and [did] not [merely] assert in simple conclusory form that [defendants] acted within the accepted standards of medical care" (Toomey v Adirondack Surgical Assoc., 280 AD2d 754, 755 [2001]; see Martino v Miller, 97 AD3d 1009, 1010 [2012]; Derusha v Sellig, 92 AD3d 1193, 1193-1194 [2012]). Thus, "Supreme Court properly shifted the burden to plaintiff to provide competent expert medical opinion evidence raising genuine issues of material fact as to deviation and causation" (Fuller v Aberdale, 130 AD3d 1277, 1283 [2015]; see Conto v Lynch, 122 AD3d 1136, 1137 [2014]; Friedland v Vassar Bros. Med. Ctr., 119 AD3d 1183, 1187 [2014]; Helfer v Chapin, 96 AD3d 1270, 1272 [2012]).
Plaintiff asserts that her submissions established the existence of triable issues of fact as to whether her pelvis was derotated "separate and apart from the lumbar fusion described in the operative note." She submitted her testimony and that of her sister that Sethi told them after the surgery that he had derotated her pelvis, and she asserted that she did not agree to this procedure and would not have done so had her consent been requested. As expert medical opinion evidence, plaintiff submitted the affirmation of Stephen Macagnone, a chiropractor.[FN3] Macagnone asserted that he took X rays of plaintiff's spine in 2002 and observed that she had a congenitally rotated pelvis. He opined that his comparison of plaintiff's preoperative films to those taken after her surgery showed "a definite realignment of her pelvis by a few millimeters," revealing that her pelvis had been derotated during the procedure. He stated that "[a] manipulation under general anesthesia is a chiropractic procedure and not one performed by a neuro or orthopedic surgeon during fusion surgery," and concluded that "[d]efendants departed from good and accepted medical and chiropractic care by, without consent, derotating [p]laintiff's pelvis traumatically" rather than treating it through nonsurgical chiropractic procedures.
Plaintiff asserts that Macagnone was qualified to offer a competent expert medical opinion as to whether defendants deviated from chiropractic standards of care (see Executive Law § 6551) and, thus, that her submissions establish triable issues of fact. It is, however, critically significant that any claim that defendants derotated plaintiff's pelvis as a separate procedure from the surgery to which she consented is necessarily an allegation that they acted intentionally. Despite the fact that plaintiff's complaint alleges only negligence, "when a patient agrees to treatment for one condition and is subjected to a procedure related to a completely different condition, there can be no question but that the deviation from the consent given was intentional" (Messina v Alan Matarasso, M.D., F.A.C.S., P.C., 284 AD2d 32, 34 [2001]). As such, this claim is subject to the one-year statute of limitations for the intentional tort of battery — that is, "intentional physical contact with another person without that person's consent" — rather than the 2½-year period applicable to medical malpractice claims (Coopersmith v Gold, 172 AD2d 982, 984 [1991]; see CPLR 214-a; 215 [3]; Dray v Staten Is. Univ. Hosp., 160 AD3d 614, 618 [2018]; Messina v Alan Matarasso, M.D., F.A.C.S., P.C., 284 AD2d at 35).
This conclusion is not altered by the fact that plaintiff does not claim that defendants acted intentionally in inflicting her injuries and pain; it is the intent to make unauthorized or offensive contact, rather than to do harm, that establishes a battery. "[O]nce intentional offensive contact has been established, the actor is not liable for negligence, even when the physical injuries may have been inflicted inadvertently, [and] a lack of care does not convert the action from intentional tort to negligence" (Messina v Alan Matarasso, M.D., F.A.C.S., P.C., 284 AD2d at 36 [internal quotation marks, brackets and citation omitted]). Plaintiff's action was not commenced within one year after the July 2013 surgery. Accordingly, any claim that defendants derotated plaintiff's pelvis as a separate, unauthorized procedure is time-barred, without regard to whether her submissions establish the existence of triable issues of fact (see Dray v Staten Is. Univ. Hosp., 160 AD3d at 617-618; Messina v Alan Matarasso, M.D., F.A.C.S., P.C., 284 AD2d at 36).
Nonetheless, we find that the remaining issues of negligence and lack of informed consent must be addressed. Plaintiff was required to support her claim that defendants committed medical malpractice by negligently derotating her pelvis as part of the spinal fusion surgery by submitting "[e]xpert analysis . . . to establish whether there was any departure from established standards of care, and whether any such departure was the proximate cause of [her] injury" (Calcagno v Orthopedic Assoc. of Dutchess County, PC, 148 AD3d 1279, 1280-1281 [2017]). Macagnone's affirmation did not establish the existence of a triable issue of fact as to defendants' alleged negligence, as he was not qualified to provide expert medical opinion evidence regarding the standards of care applicable to interbody fusion surgery (see generally Matott v Ward, 48 NY2d 455, 459 [1979]). Macagnone's license as a chiropractor did not authorize him to perform surgery (see Education Law § 6551 [3]), and nothing in plaintiff's submissions established that he had the necessary training, education or experience to render a reliable opinion on the standards of care for the underlying surgery or whether defendants deviated therefrom (see Machac v Anderson, 261 AD2d 811, 813 [1999]; see also Samer v Desai, 179 AD3d 860, 862-863 [2020]; Hoffman v Pelletier, 6 AD3d 889, 890-891 [2004]; Crozier v Lesniewski, 195 AD2d 657, 658 [1993]). Moreover, Macagnone offered no rebuttal to Pollina's expert opinion that it was impossible to change the orientation of a pelvis along the transverse plane during interbody fusion surgery, nor did he opine as to how the alleged derotation could have occurred as the result of negligence (see Toomey v Adirondack Surgical Assoc., 280 AD2d at 755-756).
For the same reasons, Macagnone was not qualified to offer a reliable expert opinion establishing that the alleged derotation was a reasonably foreseeable risk of the surgery. Thus, plaintiff did not demonstrate the existence of a triable issue of fact barring summary judgment on her informed consent claim arising out of defendants' alleged negligence (see Cole v Tischler, 68 AD3d 1595, 1596 [2009]; Aharonowicz v Huntington Hosp., 22 AD3d 615, 615 [2005]; compare Schilling v Ellis Hosp., 75 AD3d at 1046). Finally, we reject plaintiff's claim that she can establish defendants' negligence under the theory of res ipsa loquitur, as nothing in the record suggests that the issues presented are matters "on which any lay[person] is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care" (Leone v United Health Servs., 282 AD2d 860, 861 [2001] [internal quotation marks and citations omitted]; see Lake v Kaleida Health, 59 AD3d 966, 967 [2009]. Thus, Supreme Court properly granted defendants' motion for summary judgment dismissing plaintiff's complaint.
Egan Jr., Mulvey and Reynolds Fitzgerald, JJ., concur.
Lynch, J. (concurring).
I agree with the majority that plaintiff's actual claim sounds in battery, not medical malpractice, and is thus barred by the statute of limitations (see Messina v Alan Matarasso, M.D., F.A.C.S., P.C., 284 AD2d 32, 34 [2001]). Since plaintiff emphasizes that no claim is being made that defendants were negligent in performing the actual fusion surgery, I respectfully submit we need go no further.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: Pollina asserted that Tvetenstrand's involvement in plaintiff's surgery was limited to making the incision that provided Sethi with access to plaintiff's anterior spine, and that Tvetenstrand did not participate in the parts of the procedure that, according to plaintiff, caused her injuries.

Footnote 2: Pollina and Sethi asserted that pain resulting from spondylolisthesis prevented plaintiff from standing straight during presurgical X rays, resulting in a "parallax" view that caused her pelvis to appear to be slightly rotated when, in fact, it was not. They asserted that the position of plaintiff's pelvis appeared to have changed slightly in postsurgical X rays because the interbody fusion surgery had corrected her spondylolisthesis, allowing her to stand normally.

Footnote 3: Defendants assert that Macagnone's statement is inadmissible as it was made in the form of an affirmation, and chiropractors are not statutorily authorized to submit affirmations rather than affidavits (see CPLR 2106 [a]; Casas v Montero, 48 AD3d 728, 728-729 [2008]). The document was captioned as an affirmation and did not contain an attestation that Macagnone was duly sworn or that he had personally appeared before a notary public. However, it included a jurat stating that it was sworn to before the notary. Defendants make no substantive challenge to the authenticity of Macagnone's signature, and we decline to find that, in the particular circumstances presented here, this defect of form precludes the statement's admission (see Furtow v Jenstro Enters., Inc., 75 AD3d 494, 494-495 [2010]; Collins v AA Truck Renting Corp., 209 AD2d 363, 363 [1994]; see generally Siegel & Connors, NY Prac § 205 at 387 [6th ed 2018]).