Y.L. v M.V. (2025 NY Slip Op 50727(U))

[*1]

Y.L. v M.V.

2025 NY Slip Op 50727(U)

Decided on April 25, 2025

Civil Court Of The City Of New York, New York County

Tien, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 25, 2025
Civil Court of the City of New York, New York County

Y.L., Claimant,

against
M.V., Defendant.

Index No. SC-000044-24/NY

Alice Tam Tien, J.

Claimant, appearing self-represented, commenced this action to recover damages as a result of an assault and battery.
This court conducted a non-jury trial on the record on January 30, 2025, February 6, 2025, February 24, 2025, and February 25, 2025. Claimant Y. L. testified on her own behalf and presented one witness, M. T. ("M. T."). Claimant introduced twenty (20) exhibits, marked claimant's 1- 20, including two photographs. Defendant was represented by Meagan A. O' Toole Esq. and presented one witness, defendant M. V. Defendant introduced three exhibits, marked defendant's A-C.
FINDINGS OF FACT
Recitation, as required by CPLR 4213(b), of the finding of essential facts relied upon by the Court:
Testimony of Claimant Y. L.
Claimant Y. L. testified that on or about April of 2022, she met defendant through Bumble, an online dating website.[FN1]
Claimant testified credibly throughout her entire testimony. Specifically, she testified to the following: that prior to their first date, she shared with defendant that she has been a victim of previous domestic violence and sexual assault and thus, was unwilling to go out on their first date without knowing where they would be going. On May 7, 2022, she met up with the defendant for their third date to an early showing of a movie and that afterwards, they returned to her apartment where they had sexual intercourse. During their sexual encounter, defendant "choked and squeezed [her] neck the entire time." After the intercourse was over, she ran to the bathroom to run her hands under the water to "regulate [her] system." While she was in the bathroom, defendant grabbed her neck from behind, pulled out a clump of hair from her scalp, and penetrated her from behind.
Claimant further testified that she did not request, nor did she consent to defendant choking and squeezing her throat and neck or pulling her hair prior to, during, or after sexual intercourse. Defendant's actions caused her pain and the bruising around her neck started to appear two-three days after the encounters; that the bruising did not resolve for approximately two weeks. In support of her testimony, claimant also submitted photographic evidence showing bruising and redness to her throat and the back of her neck. According to claimant, her scalp was sore for three to four days afterwards and her neck was sore for almost a week. She did not attempt to stop defendant nor scream because she "dissociated and waited until he was done." [*2]She could not scream because defendant was squeezing her throat the entire time, and she could not get defendant off her because he was on top of her. After defendant was done, she went to the bathroom and defendant followed her and grabbed her neck from behind, ripped out some of her hair, and "penetrated [her] from behind." She did not try to stop defendant or say anything to him because she was "frozen because of fear of being hurt more." As soon as the second sexual encounter was over, claimant repeatedly told defendant that he needed to leave.
Claimant also testified that due to feelings of deep shame, she did not go to the hospital after the sexual encounters. On September 30, 2022, she went to the police precinct and filed a complaint, with the support of a representative from Safe Horizons.[FN2]
Although claimant filed a police complaint, the matter could not be pursued by the New York County District Attorney's Office ("DA's Office"), because according to claimant, the DA's Office wanted her to make a "cold call" to defendant in the presence of two police detectives so that they could hear him admit that he choked her and pulled her hair and she could not to go through with the cold call because she was not ready and was afraid that she would not do it properly. The DA's Office ultimately did not pursue the case because she was not ready to make the cold call, and she did not want to disclose her medical records.
Claimant testified that for the two months after the sexual encounters, she focused on going to the gym and "ignoring what happened" until she remembered that she had joined a Facebook Group ("FB Group") called "Are We Dating the Same Guy?" This FB Group was a platform for "women to warn others who are on dating apps." She met M. T., and another woman named "Shirley, who was an attorney" on this FB Group as they also dated defendant and had experience with defendant being sexually aggressive. Claimant stated that she "felt shitty during this period," had stopped eating and lost approximately twenty-five pounds. She terminated her lease early because she "did not want to be in the same space where [she] was assaulted" and she felt compelled to throw out her bed linens and mattress because of the incident.
As for her damages, claimant seeks compensation for: i) breaking her lease early, ii) a new mattress, iii) a new duvet insert, iv) new bed linens, and v) additional therapy sessions. Claimant testified that she terminated her lease early by two- and one-half months and paid the landlord accordingly. Claimant stated that her monthly rent was $3,550.00. She further testified that she purchased a new mattress, a new duvet, and new bed linens. Claimant indicated that she suffers from anxiety, depression, attention deficit hyperactivity disorder ("ADHD"), and Post Traumatic Stress Disorder ("PTSD") and was undergoing treatment with medication and therapy sessions with Dr. Christina A. Claimant testified that she has been in therapy with Dr. A. for approximately five years prior to the incident, seeing her approximately once every other week or as needed. Claimant stated that she needed sixteen (16) additional therapy sessions as a result of the sexual encounters.
Testimony of M. T.
M. T. testified credibly. She testified that she met claimant in June/July of 2022, on the FB Group. M. T. had gone on one date with defendant but had lost touch with him due to travel for her job. She wanted to support claimant and had agreed to accompany claimant to the police precinct to file a police report on August 23, 2022. However, since the Victim Advocate had already left the precinct by the time they arrived, claimant was not able to file her complaint that day but was able to file it in September of 2022. She testified that claimant was "visibly stressed and anxious, pacing and holding her arms across her chest." M. T. indicated that claimant's quality of life was not great because claimant had to terminate her lease early and suffered from [*3]insomnia, and that during this period of time claimant was very emotional and was easily upset. According to M. T., claimant "did her best to keep it together."
Testimony of Defendant M. V.
Defendant M. V. also testified. The court finds his testimony not credible. Defendant testified that after the movie on May 7, 2022, claimant invited him to her apartment. Once inside, claimant "grabbed my hands and took me to the bedroom." They started kissing and eventually had consensual sexual intercourse. According to defendant, during their sexual encounter, claimant asked that he go "harder" which is when he put his hands around her neck and asked her "like this?" to which claimant replied, "yes." However, he also admitted that she never asked that he choke her. Defendant stated that during the "rough sex," claimant had scratched his back. When he went to the bathroom to wash his hands, claimant slid up behind him and asked that he have sex with her again, to which he stated that he did not think he could "do this again." He was able to have sexual intercourse with claimant again and grabbed her hair during this encounter. Defendant denied pulling a clump of claimant's hair out of her scalp. When it was over, he got dressed and left because he had to go study for an exam. According to defendant, claimant texted a picture of herself to him approximately an hour later. There was no mention of the choking and hair pulling in subsequent text messages until approximately a week later. He apologized to claimant for making her feel uncomfortable. On June 11, 2024, after the commencement of the instant action, defendant sought a Temporary Order of Protection ("TOP") from Family Court in Kings County, however, he admitted that he and claimant were never "boyfriend-girlfriend" as he stated in his application for the TOP; he further admitted that he provided other inaccurate information in order to obtain his order of protection (i.e., alleging that claimant threatened two of his friends), further straining his credibility before this court.

CONCLUSIONS OF LAW
It is plaintiff's burden to establish their cause of action by a preponderance of the evidence. "The evidence must be of such weight as to produce a reasonable belief in the truth of the facts asserted; mere proof of a possibility is insufficient to establish a fact by a preponderance of the evidence" 8 Carmody-Wait 2d § 56:14.
"To sustain a cause of action to recover damages for assault, there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact" (Cotter v Summit Sec. Servs., 14 AD3d 475, 475 [2d Dept 2005] quoting Bastein v Sotto, 299 AD2d 432, 433 [2d Dept 2002]). Civil assault is the "intentional placing of another person in fear of imminent harmful or offensive contact" (see Charkhy v Altman, 252 AD2d 413, 414 [1st Dept 1998] quoting United Natl. Ins. Co. v Waterfront NY Realty Corp., 994 F2d 105, 108 [2d Cir 1993]).
"A valid claim for battery exists where a person intentionally touches another without that person's consent" (Wende C. v United Methodist Church, NY W. Area, 4 NY3d 293 [2005]). Although a plaintiff can sustain a claim for battery without a showing that the actor intended to cause an injury as a result of the offensive contact, it is still necessary to show that the intended contact was offensive, i.e., wrongful under all the circumstances (Messina v Mataasso, M.D., F.A.C.S., P.C., 284 AD2d 32, 35 [1st Dept 2001], quoting Zgraggen v Wilsey, 200 AD2d 818, 819 [3rd Dept 1994]). If the defendant has made an intentional bodily contact that is offensive, it is not necessary to show that defendant intended to cause harm (id.). In determining whether the contact was offensive, the lack of consent will be considered (id.). Further, the contact must be either harmful or offensive in nature, Restatement, Second, Torts § 13. A harmful contact is one which causes physical pain or illness or in some way interferes with or impairs the condition of the body, Restatement, Second, Torts § 15. An offensive contact is one which offends a [*4]reasonable sense of personal dignity, Restatement, Second Torts § 19.
The court finds that claimant sustained her burden of proof by a preponderance of evidence. Given the sensitive and intimate nature of the allegations, the court finds that claimant testified credibly. It is undisputed that claimant had informed defendant prior to their first date that she suffered trauma from past sexual and domestic abuse. It is also undisputed that claimant never asked, nor did she consent to, defendant choking her or yanking her hair during their sexual encounters.
Moreover, the post-intercourse text exchanges between the parties do not negate the fact that claimant did not consent to the offensive contact at the moment in time of when they occurred. Additionally, it is uncontroverted that defendant was aware of claimant's sensitivity to such conduct due to her past trauma. Thus, the evidence demonstrates that although the sexual intercourse may have been consensual, defendant's conduct of choking claimant and yanking her hair was not. Claimant's consent to sexual intercourse did not constitute a blanket waiver for unlimited wrongful, offensive contact. Under all the circumstances, defendant's conduct was offensive and offended claimant's personal dignity.
Although claimant and defendant proffered slightly different versions of what happened during their sexual encounters, the uncontroverted fact remains that there was indeed physical contact, i.e., defendant did choke claimant and did pull her hair. In weighing the credibility of the witnesses, applying substantive law in the interest of justice, and upon review of the documentary evidence presented, the court finds that the claimant satisfied her burden by proving her claim of battery.
However, claimant failed to carry her burden of proof for recovering damages under her cause of action for assault since there is no evidence that defendant intentionally choked claimant or pulled her hair to place her in imminent fear of harm (see Jencsik v Shanley, 2013 NY Slip Op 33310(U) [Sup Ct, NY County 2013]).
Accordingly, claimant has demonstrated entitlement to damages in the amount of ten thousand three hundred forty-six and 23/100 dollars ($10,346.23). The court finds that claimant is not entitled to the replacement cost of the duvet insert in the amount of three hundred three and 77/100 dollars ($303.77) since it was purchased more than a year after the incident. However, as claimant's proven damages exceed the jurisdictional limit of small claims, it must be reduced to the current jurisdictional limit of ten thousand dollars ($10,000.00) (see Needleman v Hewitt, 19 Misc 3d 144(A) [App Term, 2d Dept, 9th & 10th Jud Dists 2008]).

VERDICT
Upon consideration of the testimony of the parties, assessing their credibility, reviewing the documents in evidence, applying substantive law, and in the interest of substantial justice, the court finds for the claimant and awards judgment accordingly.

 ORDER
Accordingly, it is hereby
ORDERED that the claimant Y. L. is entitled to judgment in her favor against defendant M. V. The court awards claimant judgment in the amount of ten thousand dollars ($10,000.00) with statutory interest from May 7, 2022, plus disbursements to be taxed by the Clerk; and it is further
ORDERED that the Clerk is directed to enter judgment accordingly.
This constitutes the decision, verdict and order of the court.
Dated: April 25, 2025
Hon. Alice Tam Tien
Judge of the Civil Court

Footnotes

Footnote 1: https://bumble.com

Footnote 2: Safe Horizons is a nonprofit organization that provides "support, prevent[s] violence and promote[s] justice for victims of crime and abuse, their families and communities" (https://www.safehorizon.org/ [last accessed Apr. 15, 2025]).