Gary MEYERS, Individually and Guardian ad litem for Samara Meyers (a minor), and Patricia Meyers, Plaintiffs,

v.

Fred EPSTEIN, M.D., IRA Richmond Abbott, III, M.D., John Does 1–10, Jane Does 1–10, and ABC Corporations 1–10, Defendants.

No. 01 Civ. 1754(GWG).

United States District Court, S.D. New York.

Sept. 16, 2003.

Bruce H. Nagel, Robert H. Solomon, Nagel Rice Dreifuss & Mazie, LLP, Livingston, NJ, for Plaintiffs.

Elliot J. Zucker, Aaronson Rappaport Feinstein & Deutsch, LLP, New York City, for Defendants.

*OPINION AND ORDER*

GORENSTEIN, United States Magistrate Judge.

On November 14, 2002, this Court issued a decision granting in part and denying in part defendants' motion for summary judgment. *See Meyers v. Epstein,* 232 F.Supp.2d 192 (S.D.N.Y.2002). The plaintiffs have now moved *in limine* with respect to certain evidence they wish to offer in the trial of this matter. The facts underlying this case are fully set forth in

the Court's prior decision and will not be repeated here except to the extent necessary to resolve the instant motion.

*Background*

This case arises out of brain surgery performed on Samara Meyers, who was eleven years old at the time. Samara suffered from a brain tumor and the surgery was performed in order to remove that tumor. Samara and her parents ("the Meyers") allege that following the surgery Samara experienced left side paralysis, cognitive impairments and a loss of left side peripheral vision in both eyes. *See* Joint Pretrial Order, dated April 9, 2002, at 7. They do not allege, however, that the surgery was improperly performed. *See id.* at 16–18. Indeed, the only evidence on this point is that Samara's injuries were a known but extremely rare complication of the procedure. *See* Deposition of Ira Richmond Abbott, M.D., dated January 16, 2002 (annexed to Affidavit of Robert H. Solomon, dated May 9, 2003 ("Pl.Aff."), Ex. F), at 118. Rather, the Meyers' complaint is based on their allegation that they gave permission only to Dr. Fred Epstein to perform this surgery but that the surgery was instead performed by Dr. Ira Richmond Abbott. *See* Complaint, filed February 28, 2002, ¶¶ 5–7.

The Meyers brought suit alleging various claims against Dr. Abbott and Dr. Epstein. As reflected in its prior decision, the Court is permitting two of the Meyers' claims to go to trial: their battery claim against Dr. Abbott alleging an unconsented touching and their malpractice claim against Dr. Epstein alleging he misled them as to who would be performing the surgery. *See Meyers,* 232 F.Supp.2d at 199–200. In the text of its decision, the Court noted that

> it is unclear how the Meyers were damaged by the surgery given that there is no evidence suggesting that it was medically unnecessary or improperly per-

formed. Nonetheless, nominal damages are available in a battery case, *see, e.g., Brooker v. State,* 206 A.D.2d 712, 614 N.Y.S.2d 640 (3d Dep't 1994), and there may be some damages that could be shown from the plaintiffs' discovery, after the fact, that the operation was performed by a doctor different from the one to whom consent was given. *See Perna [v. Pirozzi],* 92 N.J. [446,] 461, 457 A.2d 431 [ (1983) ] (permitting damages for mental anguish resulting from such belated knowledge).

*Id.* at 198–99.

In the instant motion, the Meyers set forth their disagreement with this characterization of the law. They seek a ruling *in limine* to permit introduction of evidence relating to the complications Samara experienced following the surgery in order to argue that she should be compensated for the suffering she has endured as a result of the complications. The position advanced by the Meyers is a straightforward one: a patient who is battered by a doctor through surgery for which a different doctor was given permission may recover for all adverse consequences resulting from the surgery regardless of whether or not the doctor's performance of the surgery was negligent. Thus, the Meyers seek to recover for the effects of the surgery itself: Samara's left side paralysis, cognitive impairments and the loss of left side peripheral vision in both eyes. Defendants counter that because the adverse consequences from the surgery were foreseeable—albeit rare—the Meyers should be limited to nominal damages and any "mental anguish" damages suffered as a consequence of the discovery after the fact that Dr. Abbott had performed the operation.

*Discussion*

The question of what damages are available in a case of this kind—colloquially

referred to as "ghost surgery"—has not been squarely addressed by the New York Court of Appeals. Accordingly, our task is to predict how that court would resolve this dispute. *See, e.g., Elliott Assocs., L.P. v. Banco de la Nacion,* 194 F.3d 363, 370 (2d Cir.1999); *Travelers Ins. Co. v. 633 Third Assocs.,* 14 F.3d 114, 119 (2d Cir. 1994). Although "the best indicators of how [the New York Court of Appeals] would decide are often the decisions of lower [New York] courts," *In re Brooklyn Navy Yard Asbestos Litig.,* 971 F.2d 831, 850 (2d Cir.1992), we are not aware of any New York case law directly on point.

■ A requirement of any cause of action in tort, however, "is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered." W. Page Keeton, *Prosser & Keeton on the Law of Torts* § 41, at 263 (5th ed.1984). Because the purpose of compensatory damages is to compensate the plaintiff for an injury caused by a defendant, *see, e.g., Carey v. Piphus,* 435 U.S. 247, 254–55, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), one principle of causation is that the defendant's conduct be a "but for" cause of plaintiff's injuries. Stated otherwise, "[a]n act or omission is not regarded as a cause of an event if the particular event would have occurred without it." Keeton, *supra,* § 41, at 265. In addition to "but for" causation, the plaintiff must prove his or her losses were proximately caused by defendant's actions. *Baker v. Drake,* 53 N.Y. 211, 211 (1873); *Hanley v. St. Charles Hosp. & Rehab. Ctr.,* 763 N.Y.S.2d 322, 324 (2d Dep't 2003). These basic rules of causation fit hand-in-glove with the law of damages. Under New York law, any damages recovered must be the direct result of defendant's wrongful actions. *See, e.g., Steitz v. Gifford,* 280 N.Y. 15, 20, 19 N.E.2d 661 (1939); *Roth v. Hudson Transit Lines, Inc.,* 72 Misc.2d 999, 1002, 340 N.Y.S.2d 224 (N.Y.Sup.Ct.1972).

The causation requirement may differ for negligence and intentional torts. Although "even an intentional wrongdoer is only responsible for the injuries he has directly caused," *Cauverien v. De Metz,* 20 Misc.2d 144, 147, 188 N.Y.S.2d 627 (1959), "the usual common law rule seems to be that the strictures of proximate cause are applied more loosely in intentional tort cases," *United Food & Commercial Workers Unions, Employers Health & Welfare Fund v. Philip Morris, Inc.,* 223 F.3d 1271, 1274 (11th Cir.2000).

The Restatement (Second) of Torts states the principle underlying the special rule for intentional torts: "responsibility for harmful consequences should be carried further in the case of one who does an intentionally wrongful act than in the case of one who is merely negligent or is not at fault." § 435B cmt. a (1965); *see also id.* § 501(2). *See generally* Keeton, *supra,* § 8, at 37 n. 27 ("For an intended injury the law is astute to discover even very remote causation.") (quoting *Derosier v. New England Tel. & Tel. Co.,* 81 N.H. 451, 130 A. 145, 152 (1925)). The more generous concept of causation accorded plaintiffs in the case of intentional tortfeasors, however, appears to allow only an expanded concept of proximate cause. The Court is unaware of any case suggesting that the "but for" causation requirement is obviated where an intentional tort is involved.

■ In any event, expansion of causation is inappropriate in the instant case where there is no evidence that the surgery was performed for the purpose of causing any harm to Samara. While the Meyers allege a complete lack of consent to Dr. Abbott's performing the surgery, some of the same considerations that govern the law of informed consent—that is, situations where the risks of surgery have not been fully disclosed—should provide guidance here. In an informed consent

case, no recovery is permitted where the surgery would be desired by a reasonably prudent person in the patient's position. *See* N.Y. Pub. Health Law § 2805–d(3). In the case of "ghost surgery," the surgery is necessarily desired by the patient inasmuch as the patient has sought to have it performed by at least one doctor. Both these situations stand in stark contrast to the situation in which a doctor undertakes a surgical procedure for which no consent of any kind has been given—for example, an unauthorized surgery performed while a patient is under anaesthetic for another procedure. Because the patient in a "ghost surgery" case actually desires the surgery to take place, the consequences of the surgery should be evaluated in the context of what would have occurred if the surgery had been executed exactly according to the patient's consent.

In the situation of informed consent, New York does not permit a cause of action unless the plaintiff establishes "that a reasonably prudent person in the patient's position would not have undergone the treatment or diagnosis if he had been fully informed." N.Y. Pub. Health Law § 2805–d(3). Case law suggests that this rule developed in the context of determining whether there was a causal connection between a doctor's failure to adequately disclose risks and the patient's injuries. *E.g., Dries v. Gregor*, 72 A.D.2d 231, 236–37, 424 N.Y.S.2d 561 (4th Dep't 1980) ("[T]he causal connection between a doctor's failure to perform his duty to inform and a patient's right to recover exists only when it can be shown objectively that a reasonably prudent person would have decided against the procedures actually performed."); *accord Canterbury v. Spence*, 464 F.2d 772, 790 (D.C.Cir.1972) ("A causal connection exists when, but only when, disclosure of significant risks incidental to treatment would have resulted in a decision against it."). Thus, if the patient could have been expected to undergo the

treatment anyway, the doctor's failure to inform could not be considered the actual or "but for" cause of the patient's injuries.

The same principle should operate in the case of "ghost surgery." Because Samara planned to have the tumor removal surgery by *some* doctor (that is, Dr. Epstein), it cannot be said that Dr. Abbott's performance of the surgery was the actual cause of her injuries. The appropriateness of such a rule is highlighted by imagining a "ghost surgery" that was successful. Suppose a patient sought to have his gall bladder removed. The surgery was completely successful but it turned out that Dr. A had performed the surgery whereas the patient had granted only Dr. B permission to perform it. On the Meyers' theory, the patient could recover for all the negative consequences of the surgery: the several days of abdominal pain, the after-effects of the anaesthetic, the incision to the stomach and the resultant scarring, etc. This theory, however, ignores the fact that the patient would have endured all of these effects had Dr. A not performed the surgery because the patient would have had Dr. B perform it. To allow the patient to recover for these effects would thus result in an award of damages completely unrelated to the wrong committed by Dr. A. Such a rule would treat the surgery as essentially no different from a street-knifing.

The Meyers appropriately concede that the effects of a successfully performed surgery are not recoverable. *See* Brief in Reply to Defendants' Opposition to Plaintiffs' Motion to Define Scope of Damages, dated June 23, 2003, at 3. Nonetheless, they argue that the effects of a "known complication" are recoverable. *Id.* But there is no principled distinction between the injuries that result from a surgery without complications and the injuries that result from a properly performed surgery

that results in some known or foreseeable complication. Unless the Meyers could show that the same surgery performed by Dr. Epstein would not have resulted in these complications, it cannot be said that Dr. Abbott's act was the cause of the complications endured by Samara. The fact that the complications Samara suffered are rare—while scarring and a recovery period are certain—does not alter the fact that Dr. Abbott's performance of the surgery was no more the cause of the rare complications than it was a cause of the scar and recovery period. In other words, in the absence of evidence that the procedure was improperly performed, the potential for complications was the same regardless of who performed the brain surgery on Samara.

"Ghost surgery" involves the unusual tort where the plaintiff actually wishes to be the subject of the very conduct that forms the basis of the tort—as long as the conduct is undertaken by someone else. Informed consent law recognizes this principle through its requirement that the plaintiff demonstrate that an objectively reasonable patient would not have undergone the surgery at issue. Such a requirement ensures that there is a reasonable connection between the defendant's wrongful conduct and the plaintiff's injuries. In the case of "ghost surgery," however, there is no need to determine whether a "reasonably prudent person" would have undergone the surgery because by definition the patient in the "ghost surgery" case necessarily would have had the surgery performed by some other doctor.

As already noted, the Meyers have conceded that they have no evidence that there was anything improper in the performance of the surgery. Indeed, there will be evidence that Dr. Abbott had more experience performing this surgery than did Dr. Epstein. *See* Report of David Befeler, M.D., dated February 12, 2002

(annexed to Pl. Aff., Ex. C), at 4. Unless the Meyers can show that the results of the surgery would have been different had it been performed by Dr. Epstein, there is no basis for connecting Samara's resulting condition with the alleged wrong committed by Dr. Abbott.

The same is true for their claim against Dr. Epstein. The Meyers cannot establish a "but for" connection between Dr. Epstein's acts and Samara's post-surgical disabilities. Had Dr. Epstein appropriately informed the Meyers that Dr. Abbott would be performing the surgery, the Meyers still would have had the surgery performed by some doctor. *See* Deposition of Gary Meyers, dated January 3, 2002 (annexed to Pl. Aff., Ex. D), at 30. Thus, Dr. Epstein's conduct cannot be shown to have caused the complications that Samara has endured.

In sum, while the surgery resulted in rare and unfortunate complications, the Meyers cannot show that these complications were caused by the alleged wrongful acts: Dr. Abbott's performance of the surgery without their consent or Dr. Epstein's alleged misstatements. Rather, the evidence will be that these complications, while rare, were a foreseeable result of the performance of the surgery even when done correctly. The Meyers may not recover for damages that are the foreseeable result of an event that would have occurred anyway.

At least one case from another jurisdiction supports this conclusion. In another "ghost surgery" case, *Perna v. Pirozzi*, 92 N.J. 446, 457 A.2d 431 (1983), the court stated:

> In an action predicated upon a battery, a patient need not prove initially that the physician has deviated from a professional standard of care. Under a battery theory, proof of an unauthorized invasion of the plaintiff's person, even if

harmless, entitles him to nominal damages. The plaintiff may further recover for all injuries proximately caused by the mere performance of the operation, whether the result of negligence or not. If an operation is properly performed, albeit by a surgeon operating without the consent of the patient, and the patient suffers no injuries except those which foreseeably follow from the operation, then a jury could find that the substitution of surgeons did not cause any compensable injury. Even there, however, a jury could award damages for mental anguish resulting from the belated knowledge that the operation was performed by a doctor to whom the patient had not given consent.

*Id.* at 438 (citations omitted).

The Meyers focus their argument on the sentence of the passage that states: "[t]he plaintiff may further recover for all injuries proximately caused by the mere performance of the operation, whether the result of negligence or not." *Id.* They interpret this sentence to mean that they may recover for all consequences of the surgery, including Samara's impaired physical condition. *See* Plaintiffs' Memorandum of Law in Support of Motion to Define Scope of Damages, dated May 9, 2003, at 2. In fact, the quoted sentence can be understood only by considering the remainder of the paragraph, which makes clear that where an injury "foreseeably follow[s] from the operation," no recovery is available for that injury. 457 A.2d at 438. Instead, the plaintiff would be relegated to "damages for mental anguish resulting from the belated knowledge that the operation was performed by a doctor to whom the patient had not given consent." *Id.* Here, the only evidence with respect to the effects Samara suffered are that they were known potential complications of the procedure and thus that they were "foreseeable."

The Court is aware of two cases holding that all consequences of "ghost surgery" are recoverable even where there has been no showing of negligence: *Vitale v. Henchey,* 24 S.W.3d 651, 659–60 (Ky.2000), and *Pugsley v. Privette,* 220 Va. 892, 263 S.E.2d 69, 74–75 (1980). *Vitale* provides no discussion of the reasoning underlying its conclusion, other than to state that "[a] person injured as a result of a battery is entitled to recovery for any damages resulting therefrom." 24 S.W.3d at 659. Yet, the authority *Vitale* cites for this proposition itself relies on the "but for" concept by noting that a damages recovery must place the plaintiff in the "position he would have occupied had it not been for the defendant's tort." 22 Am.Jur.2d *Damages* § 130. *Pugsley* too does not discuss the "but for" principle. Instead, it relies on the argument that a physician must bear the "risk" of operating without consent. 263 S.E.2d at 75. *Pugsley* does not discuss, however, why the wrong committed by the physician is the cause of consequences of a surgery that would have taken place anyway. Neither case discusses the analogous situation of informed consent, where no recovery is available (at least under New York law) for the consequences of surgery if a reasonably prudent person in the patient's position would have undergone surgery if fully informed. Again, under the rule articulated in *Pugsley* and *Vitale,* even the patient in a successful operation would be able to recover for the scar, the pain of the surgery, the discomfort from the recovery, and so on. For the reasons already stated, this Court respectfully disagrees with these courts on this point and believes that the New York Court of Appeals would reach the opposite result.

**158**

*Conclusion*

For the foregoing reasons, plaintiffs' motion *in limine* is denied.

SO ORDERED.